**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LAUREL DAVENPORT, obo LAG, | ) | CASE NO. 1:19-cv-01206 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Laurel Davenport (hereinafter "Plaintiff"), on behalf of her minor child L.A.G.,

challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security

(hereinafter "Commissioner"), denying an application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

## I. Procedural History

On May 19, 2016, Plaintiff, on behalf of her child L.A.G., filed an application for children's

SSI, alleging a disability onset date of November 1, 2015. (R. 9, Transcript ("Tr.") 161-166). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 108-110, 116-125). Plaintiff participated in the hearing on April 11, 2018, was represented by counsel, and testified. (Tr. 35-82). A medical expert ("ME") also participated and testified. *Id*. On August 8, 2018, the ALJ found L.A.G. was not disabled. (Tr. 29). On May 1, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On May 28, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 12 & 13).

Plaintiff asserts the following assignments of error: (1) "[t]he ALJ erred in finding that LAG did not have marked impairments in the … domains … [of] interacting and relating with others and caring for yourself," and (2) "[t]he ALJ's determination regarding credibility was not supported by substantial evidence and violated Social Security Ruling 16-3p." (R. 10, PageID# 698-699).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment and Education Records

On December 15, 2015, when L.A.G. was six-years-old, she took a Wechsler Individual Achievement Test-III ("WIAT-III") administered by Mary Armstrong, M. Ed., and the results were considered valid, as L.A.G. was compliant and appeared to give her best effort on all tasks.

---

[1] The recitation of the evidence is not intended to be exhaustive. It focuses on those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

(Tr. 398-400). L.A.G. achieved her best performance in Numerical Operations with a score of 108, placing her in the average range (85-115), and her lowest score was in Oral Reading Fluency with a score of 80, placing her in the below-average range (70-84).[2] *Id.* Ms. Armstrong observed that L.A.G. "was able to read a grade level passage within the allotted time frame. Her oral reading was monotone, with frequent word-by-word reading and little expression. She had difficulty decoding and recognizing words at the first grade level." (Tr. 398).

On January 4, 2016, L.A.G. was administered the Wechsler Intelligence Scale for Children-Fifth Edition ("WISC-V"). (Tr. 403-405). She obtained a full-scale score of 96, which is in the average range. On January 7, 2016, an initial Evaluation Team Report (ETR) was completed. (Tr. 288-297, 397-437). Her teacher, Ms. Johnson, observed that L.A.G. "communicates clearly and currently doesn't show emotional concerns. She is respectful, but quiet." (Tr. 289). Further, Ms. Johnson stated L.A.G.'s "behavior is 'superb.'" (Tr. 289). The specially designed instruction consisted of seeing a speech pathologist to increase receptive and expressive language skills. (Tr. 293).

On March 11, 2016, L.A.G. saw Lubna Chaudhry, M.D., regarding bed-wetting concerns. (Tr. 303). No behavior issues were reported. *Id.*

On April 25, 2016, a Child/Adolescent Diagnostic Assessment was completed by Jen Lemmer-Graber at Signature Health after Plaintiff reported that L.A.G. was very immature, rolled in her own vomit, destroyed anything she received, lied about her grades, and ate her clothing. (Tr. 322, Exh. 4F). Plaintiff reported that she observed L.A.G. make inappropriate reference to a private part of her body, (Tr. 324, 331), thereafter Plaintiff encouraged her

---

[2] Two categories exist beneath the "below average" range—the "low range" (scores 55-69) and the "very low range" (scores below 55).

children to maintain more personal space, and L.A.G. had seen age inappropriate movie(s) at a family-member's house. *Id*. L.A.G. "denied anyone ever touching her inappropriate," and Plaintiff denied L.A.G. ever reporting any pain, bleeding, etc." *Id*. Plaintiff reported that L.A.G.'s understanding of right and wrong, as well as development of conscience, were within normal limits. (Tr. 327). Plaintiff reported that L.A.G. had about five friends, that she approved of her friends, and that L.A.G. did not have any recent conflicts with those friends. (Tr. 328). Plaintiff reported L.A.G.'s hobbies included "swimming, bouncy house(s), birthday parties." *Id*. Plaintiff did not authorize Signature Health staff to contact school staff about L.A.G. (Tr. 329). She indicated that L.A.G. did not have any behavior problems, was on an IEP, had difficulty interacting with her peers, and no problems with authority figures. (Tr. 329). Plaintiff reported no concerns with L.A.G. in the following: sleep problems, depressed mood/sadness, anxiety/worry, obsessive thoughts, anger, physical aggression, oppositional/defiant behaviors, inattention, hyperactivity, mood swings, or impulsivity. (Tr. 330-31). Plaintiff "reported she is concerned with client wetting the bed any time of the day." *Id*. at 336. Ms. Lemmer-Graber observed that L.A.G. was oriented x 3, made good eye contact, had normal attention/concentration span, appropriate affect, normal speech/language, cooperative behavior/attitude, average intellectual functioning, good hygiene, coherent and logical thought processes, normal thought content, normal motor activity, intact memory, and limited judgment/insight. (Tr. 331-332). It was noted that L.A.G. was "not on any medications," "has not been on any medications in the past," and did not have a previous mental health diagnosis. (Tr. 336). Ms. Lemmer-Graber diagnosed adjustment disorder. (Tr. 335).

On June 29, 2016, Plaintiff and L.A.G. met with therapist Michelle Baker, LISW. (Tr. 353). Plaintiff reported that L.A.G. was "doing better except for 'a few things.'" *Id*. Plaintiff reported

she did not like when L.A.G. and her sister were "rough-housing" at home, and did not allow

them to share a blanket while watching TV in an attempt to enforce boundaries. (Tr. 353).

On September 1, 2016, psychologist Elle M. Weinhouse, Ph.D., completed a psychological

evaluation report at Plaintiff's request. (Tr. 377-379). Plaintiff provided the psychological history

for the report, as Dr. Weinhouse was "still waiting for records from Beechbrook, Department of

Job and Family Services … and Signature Health." (Tr. 377). The report notes:

> Her mother views her as shy, with problems with learning and memory, engaging
> in destructive behavior and lying, and as having strange ideas and strange
> behavior. The latter include inappropriate sexual behavior, eating her own and her
> sister's blood from their cuts, tearing up her shoes and clothing and blaming it on
> reasons that aren't true, and talking to herself. Although she has friends that she
> gets along with, she isolates herself and enjoys doing things alone. Otherwise, she
> has no problems with making and keeping friends and has no problems [with] her
> temper. Her mood most of the time seems bland and unfeeling.

(Tr. 377). On examination, Dr. Weinhouse described L.A.G. as "very well behaved and

cooperative," further noting that she worked diligently throughout the evaluation, talked readily,

expressed herself well, and openly discussed the sexual concern at the end of the second session.

(Tr. 377-378). Dr. Weinhouse's diagnostic impression was, based on past school testing, that

L.A.G.'s "nonverbal intellectual abilities are solidly within the average range for age, with math

reasoning, math calculation and reading comprehension also with the average range." (Tr. 378).

She opined that L.A.G.'s functioning at the time of testing in December of 2015 "was more

consistently within the borderline normal range in areas of verbal intellectual capacity, verbal

receptive and expressive skills and language and phonic-related academic skills, and auditory

working memory." (Tr. 378). However, she stated that "[a]t present testing, [L.A.G.] shows more

advanced visual-motor skill and visual immediate memory." (Tr. 378-379). Dr. Winehouse

opined that her greatest concern was the onset of sexualized behavior earlier than previously

thought. (Tr. 379). Dr. Weinhouse indicated that she did not have an opportunity to explore L.A.G.'s pica (clothes chewing). *Id*.

On December 12, 2016, L.A.G. saw her counselor for the first time since June 2016. (Tr. 447). Plaintiff stated bathroom accidents had decreased, while L.A.G. stated she no longer wets the bed. *Id*. She continued to have issues with pica, such as eating crayons. *Id*.

On December 22, 2016, Plaintiff and L.A.G. saw Jessica R. Griggs, D.O., who noted subjective complaints of bed-wetting, hearing voices, touching herself in her privates, wanting to taste her own blood, and slapping her younger sister. (Tr. 593-594).

On January 3, 2017, L.A.G. was seen by psychiatrist Priya Shrestha, M.D. (Tr. 521-524). On examination, L.A.G. was calm and cooperative with appropriate eye contact, had normal speech, and euthymic, mood-congruent, full-range affect. (Tr. 523). She had linear, logical, and goal-oriented thought process without suicidal/homicidal ideation or delusions. *Id*. She did not endorse any auditory or visual hallucinations and did not appear to be responding to hallucinatory stimuli. *Id*. She had fair insight and judgment. *Id*.

On February 28, 2017, Plaintiff and L.A.G. met with nurse Sullivan at Signature Health and indicated that sometimes L.A.G. is violent with her sister. (Tr. 487). The same day, Dr. Shrestha diagnosed unspecified depressive disorder, "R/O PTSD vs inappropriate early sexualized behavior," pica, and urinary incontinence. (Tr. 494). Plaintiff reported that L.A.G. was still hitting her sister, banging her head, required redirection for daily hygiene, was self-isolating, and stimulating herself. (Tr. 493).

L.A.G.'s IEP for November 2016 through November 2017 prescribed continuing speech therapy to improve her communication skills and occupational therapy to improve her handwriting. (Tr. 219-222).

On February 22, 2017, child psychologist Vanessa Jensen, Psy.D., performed a psychological examination of L.A.G. (Tr. 542-546). According to Plaintiff, L.A.G. wet the bed, urinated on the couch during daytime, stole money from her boyfriend, lies all the time, has difficulty paying attention, engages in self-harm by banging her head or scratching her wrists, gets upset easily, had developmentally inappropriate interests, and poor hygiene. (Tr. 543). Her administration of the Kaufman Brief Intelligence Test-2 yielded an intellectual ability falling within the average range. (Tr. 544-545). Dr. Jensen observed that "despite one report of an incident at her previous school related to being in the bathroom and incident of toileting accidents[], [L.A.G.'s] current teacher has reported no problems," a discrepancy Dr. Jensen struggled to resolve. (Tr. 546). Dr. Jensen opined that L.A.G.'s family "may require more intensive intervention" in the home setting "that can assist [Plaintiff] in learning to more effectively manage" L.A.G.'s behavior when at home. (Tr. 546).

On June 5, 2017, L.A.G. was seen by her counselor, Ms. Baker, who noted L.A.G. had not been seen since February after several no-shows for appointments. (Tr. 581). Plaintiff noted she wanted to re-engage in counseling and complained of L.A.G.'s "'weird' behaviors." *Id*.

On June 8, 2017, L.A.G.'s fourth quarter second-grade report card showed that she was "exceeding expectations," the highest grade possible, in seven out of nine subjects, with a grade of "meeting expectations" in the other two. (Tr. 529). In terms of conduct, her teacher noted that she was a "pleasure to have in class." *Id*.

On December 19, 2017, L.A.G. was seen by a nurse practitioner where it was noted that she had been evaluated for urinary incontinence. (Tr. 582). The nurse also noted "a couple of episodes of fecal incontinence when [L.A.G.] didn't want to come in from the playground." (Tr. 582). On the same date, Plaintiff reported to L.A.G.'s counselor that L.A.G. was banging her

head when she did not get her way. (Tr. 552). Plaintiff also reported new "hoarding" behavior. *Id*. The counselor explained to Plaintiff the importance of consistency with appointments. *Id*.

On February 27, 2018, L.A.G. told her counselor, Ms. Baker, that she had friends, but that she worries she cannot go anywhere as she "pees the bed." (Tr. 632).

On January 9, 2018, Ms. Baker, L.A.G.'s counselor, told Plaintiff that she was not utilizing all services as recommended, and that due to her inconsistency with appointments it was "difficult to assess what is going on." (Tr. 644). During the session, L.A.G. admitted to feeling frustrated with her younger sister and admitted that she would hit her at times. *Id*.

### 2.  Medical and Educational Opinions Concerning Plaintiff's Functional Limitations[3]

On August 25, 2016 and October 25, 2016 respectively, state agency reviewing psychologist, Lisa Foulk, Psy.D., and speech language pathologist, Marissa Hastie, reviewed the evidence of record and concluded that L.A.G. "does not meet, medically equal, or functionally equal the listings…." (Tr. 91). They opined that L.A.G. had no limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and health and physical well-being. (Tr. 89-91). Further, they opined she had less than marked limitations in the domains of interacting and relating with others and caring for yourself. (Tr. 90).

On December 15, 2016 and December 21, 2016 respectively, state agency reviewing

---

[3] J. Joseph Konieczny ostensibly completed an evaluation at the request of the State Agency on October 14, 2016. (Tr. 381-383). The evaluation, however, references a much older child born in 1998 in Florida. (Tr. 381). At the hearing, the ME, counsel, and the ALJ all noted there was something wrong with the evaluation. (Tr. 73). Plaintiff's brief takes the position that the report does not accurately reflect L.A.G. (R. 10, PageID# 705). Due to the apparent documentation error, the ALJ's decision "afforded no weight to the examination, diagnosis and opinions…." (Tr. 23).

psychologist, Tonnie Hoyle, Psy.D., and pediatrician Obiaghanwa Ugbana, M.D., reviewed the records and concurred with the earlier opinions concerning the six domains, except that they found L.A.G. had less than marked limitations rather than no limitations in the domain of acquiring and using information (Tr. 101-102).

On January 4, 2017, L.A.G.'s second-grade teacher, Ms. Hernandez, completed a teacher questionnaire opining that L.A.G. had problems in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. (Tr. 210-213). However, in those domains, in all subcategories none of the areas were deemed to present more than a "slight problem." *Id*. Ms. Hernandez opined L.A.G. had no problems caring for herself (Tr. 214), and with respect to health and physical well-being, Ms. Hernandez explained that "[t]here are no chronic conditions that I know of or have observed in the classroom." (Tr. 215).

On May 31, 2017, Ms. Hernandez completed another teacher questionnaire that was largely consistent with her earlier questionnaire responses. (Tr. 536-540). Significant differences include her opinion that L.A.G. no longer had any problems moving about and manipulating objects (Tr. 537), and in the domain of interacting and relating to others, L.A.G. had no problems in twelve of thirteen subcategories, with only "slight problems" making and keeping friends. (Tr. 536).

**B. Relevant Hearing Testimony**

At the April 11, 2018 hearing, L.A.G. testified as follows:

- She was nine-years-old, attended elementary school, and knew the difference between the truth and a lie. (Tr. 38-39).

- She had no problems at school, but she had problems at home. (Tr. 39-40). She argues with her sister a lot. (Tr. 40).

- She was not unhappy or feeling sad about anything. (Tr. 40).

- She did not feel sick in her body, was not in pain, wore glasses, and she has failed a hearing test. (Tr. 40-41). She has no problems walking, running, jumping, and being active. (Tr. 41).

- She has friends both at school and outside of school. (Tr. 41-42).

  Plaintiff, L.A.G.'s mother, also testified at the hearing to the following:

- L.A.G. wets the bed every night. She once had a bowel movement at school while playing outside because she was afraid she would have to stay inside and wanted to continue playing outside. (Tr. 47).

- L.A.G. is scared to go to sleep because she thinks the toys might come alive, and she feels her daughter should be past that stage. (Tr. 48).

- L.A.G. engages in self-injuring behavior such as scratching her arms or banging her head if she does not get what she wants. (Tr. 49).

- L.A.G. has not been prescribed any medications. (Tr. 50).

- On one occasion only, L.A.G. tried to taste her sister's blood to find out if it was sweet or not. (Tr. 51).

- L.A.G. has hit her seven-year-old sister and her one-year-old brother. (Tr. 52, 63).

- On two occasions, L.A.G. has shown inappropriate sexual behavior for her age, and on a third occasion, another little girl jokingly told L.A.G. to kiss my butt, and L.A.G. did so. (Tr. 54-55).

- She was not aware of any instances of L.A.G. being sexually abused. (Tr. 58).

- L.A.G. was doing well in school, previously she had issues getting along with her peers, but she was getting along with other students at present. (Tr. 58).

- L.A.G. had an IEP at school for speech, language, and handwriting. (Tr. 59).

- L.A.G. gives away money and items to other children at recess in an attempt to buy friends. (Tr. 61).

- L.A.G. almost gets hit by a car every day because she does not pay attention. (Tr. 63).

- L.A.G. constantly needs to be reminded to use the bathroom and perform routine hygiene.

(Tr. 63).

- L.A.G. steals money from her and her step-father. (Tr. 66).

John DiTraglia, M.D., also testified at the hearing in the capacity of a medical expert ("ME"). (Tr. 66-68). The ME testified that L.A.G. has some speech, language, behavior, and mood problems. (Tr. 67-68). However, he testified that she did not meet or equal a listing. (Tr. 68). With respect to the six domains, he testified that L.A.G. had less than marked limitations in Acquiring and Using information, Interacting and Relating with Others, and Caring for Herself, with no evidence of limitations in the other three domains (Tr. 68). The ME testified that L.A.G.'s "sexual" behavior "must be something she learned somehow," but that his "view on prognosis" was that "[s]he should do alright." (Tr. 69).

In response to questions from Plaintiff's counsel, the ME testified that L.A.G.'s bed-wetting may not be normal, but it was also not unusual and would be a "self-limiting problem." (Tr. 69-70). When the ME testified that L.A.G.'s sexual acting out should improve with time, counsel inquired "but what about now?" (Tr. 70). In response, the ME testified that L.A.G.'s behavior "would not be a marked impaction on any particular domain." (Tr. 70). After continued questioning, the ME stated that for her behavior to be marked, it would have to impact her "being able to function in school, being able to function overall." *Id*. When asked about L.A.G's conflicts at home with her younger sister, the ME explained that siblings fighting was normal behavior for her age. (Tr. 71).

### III. Disability Standard

To qualify for SSI benefits, "[a]n individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). To qualify, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

For children's disability claims, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d). To make this latter determination, the Commissioner assesses the functional limitations caused by the impairment(s). 20 C.F.R. § 416.926a(a). This involves the consideration a child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself/himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment(s) results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment(s) functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R.

12

§ 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on ***, 2009. Therefore, she was a school-age child on May 6, 2016, the date application was filed, and is currently a school-age child (20 C.F.R. § 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since May 6, 2016, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: adjustment disorder, speech/language developmental delay, and enuresis (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since May 6, 2016, the date the application was filed (20 CFR 416.924(a)).

(Tr. 19-29).

The ALJ found L.A.G. had less than marked limitations in the following three domains: acquiring and using information; interacting and relating with others; and, caring for oneself. (Tr.

24, 26-27). The ALJ further found L.A.G. had no limitations in the remaining domains of attending and completing tasks; moving about and manipulating objects; and, health and physical well-being. (Tr. 25-28).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Weight Ascribed to ME

Plaintiff's first assignment of error challenges the ALJ's finding that L.A.G. did not have

any marked impairments in the six functional domains despite her testimony that her daughter wets the bed, has difficulty sleeping because she believes that her toys will come alive, scratches herself, bangs her head against the wall, fights with her siblings, has shown inappropriate sexual behavior for her age, has to be reminded to engage in basic hygiene, has tried to "buy" friends, stole money from her, and once tried to taste her sister's blood. (R. 10, PageID# 710-711). Plaintiff asserts the ALJ erred by assigning great weight to the ME's testimony, which Plaintiff characterizes as inconsistent with the evidence of record. (R. 10, PageID# 711). Plaintiff further suggests the ALJ improperly cherry-picked the evidence in rendering the underlying decision. (R. 10, PageID# 710).

First, Plaintiff's suggestion that the ALJ was cherry-picking from the record fails to furnish a basis for remand. The Sixth Circuit has found the allegation that an ALJ cherry-picked evidence unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017).

Second, there is nothing inherently improper about an ALJ relying on the testimony of a ME. *See, e.g., Buxton v. Halter*, 246 F.3d 762,775 (6th Cir. 2001) (ALJ could properly rely on

non-examining medical expert physicians to make sense of a record with conflicting medical opinions and evidence). Furthermore, Plaintiff's contention that the ME's opinion was "inconsistent with the evidence of record" is nothing more than Plaintiff's lay interpretation of the medical record. Plaintiff's brief attempts to create a discrepancy in the opinions of record where none exists, by twice citing the opinion of Dr. Jensen in alleged contrast to the ME. (R. 10, PageID# 712-713). However, Dr. Jensen did not offer any opinion as to the level of limitation caused by L.A.G.'s various impairments in the six domains. (Tr. 542-546). Plaintiff engages in conjecture by suggesting the behaviors identified by Dr. Jensen—behaviors the ME was also doubtless aware based on a review of the record—necessitated limitations that were at least "marked."

Essentially, Plaintiff is asking the court to conduct a *de novo* review of the medical evidence, find that the expert opinion of the ME should be set aside based on said review, and reweigh the opinions and evidence to find at least two domains where marked limitations existed. This greatly exceeds the standard of review, however. This court's role, in considering a social security appeal, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Plaintiff also suggests the ME did not adopt the "whole child" approach required by Social Security Ruling ("SSR") 09-1p, 2009 WL 396031 (S.S.A. Feb. 17, 2009). However, this argument is undeveloped as Plaintiff merely concludes that "the ALJ failed to follow this

formula." (R. 10, PageID# 711). Plaintiff also cites SSR 09-5p regarding the functional

equivalence domain of "interacting and relating with others." 2009 WL 396026 (S.S.A. Feb. 17,

2009). Plaintiff proceeds to conclude that the ALJ "improperly relied on the testimony of the ME

that there is no marked impairment unless it impacted her functioning at school." (R. 10,

PageID# 712). Again, Plaintiff fails to set forth any developed argument explaining how the

ALJ's decision violated SSR 09-5p. *Id*. Furthermore, Plaintiff's characterization of the ME's

testimony is not entirely accurate. While the ME's testimony can be interpreted as stating that he

would expect to find some impact on a child's functioning in school before a limitation became

marked, he did not expressly testify that an impairment can never be marked unless it impacted

school functioning. (Tr. 70-72). In any event, Plaintiff has failed to explain how such testimony

violates any social security rule. Further, even if the ALJ's reliance on the ME was misplaced,

the State Agency psychologists' opinions as well as the teacher opinions were consistent with the

ME, because none of them opined that L.A.G. had limitations reaching the marked level in any

domain. The ALJ also ascribed great weight to these opinions. (Tr. 22-23).

In sum, the ALJ properly considered the opinions of the State Agency psychologists, the

ME, and the various medical and educational opinions and evidence of record, as it is the role of

the administrative law judge to weigh the medical evidence and resolve any conflicting medical

opinions in the record. *Lane v. Secretary of Health and Human Services*, 895 F.2d 1413 (6th Cir.

1990) ("The ALJ has the responsibility to weigh the medical evidence if conflicting medical

opinions have been presented."). Plaintiff's first assignment of error is not well taken.

### 2. Credibility Assessment

In the second assignment of error, Plaintiff asserts the ALJ's credibility evaluation of

Plaintiff's hearing testimony was not supported by substantial evidence; and further argues that

the evaluation notes from Dr. Weinhouse and Dr. Jensen support Plaintiff's testimony. (R. 10, PageID# 713, 716).

An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). For example, "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a]

18

compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p (as well as SSR 96-7p which it superseded), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms…."[4] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms." (Tr. 20).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

---

[4] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

(5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p). The ALJ concluded that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20).

Although the ALJ's credibility discussion is not contained in a single unified statement, the underlying decision extensively discusses the rather sparse treatment records as well as L.A.G.'s educational records, finding little support for the subjective complaints relayed by Plaintiff to mental health providers. The decision states:

> The claimant's mother, Laurel Davenport, testified on the claimant's behalf. She testified that the claimant wets the bed and has difficulty sleeping because she believes that her toys will come alive. Additionally, the claimant scratches herself, bangs her head against the wall, and has tried to taste her sister's blood. She also hits her brother and sister and has engaged inappropriate sexual behavior for her age. Moreover, the claimant has attempted to "buy" friends with money and she has to be told to use the bathroom, clean herself, and brush her teeth. (Testimony)

> The claimant also made statements. She stated that she knows the difference between the truth and a lie. She explained that she argues with her sister, but she does not have any issues at school. Additionally, she has friends in and out of school. (Testimony)

> \*\*\*

> As for statements about the intensity, persistence, and limiting effects of the claimant's symptoms, the evidence of record does not fully support the severity the claimant alleges. In January 2016, five months before the alleged onset date, the claimant underwent an IEP evaluation. The evaluation notes that the claimant had weakness in areas of reading fluency, sight words, and phonemic awareness. Cognitive testing placed the claimant's full scale IQ in the average range. On achievement testing, she scored in the below average range in oral reading fluency and word reading, but average range in numerical operations, early

reading skills, reading comprehension, math problem solving, alphabet writing fluency, sentence composition, numerical operations, and spelling. Language testing revealed borderline core language, expressive language, and language structure, but average receptive language and language content. *Finally, her teacher reported that the claimant's behavior was "superb" and she communicated clearly without emotional concerns.* (2F/2-3)

Fourth [sic] months later, in April 2016, the claimant established care with a counselor to treat adjustment disorder. The claimant's mother reported that she was concerned about the claimant's inappropriate sexually related behavior, as well as the claimant's destructive behavior and difficulty going to the bathroom. *However, asides for the complaints, the claimant had an essentially normal mental status examination, including good hygiene, cooperative behavior and attitude, good eye contact, appropriate affect, normal speech/language, coherent and logical thought processes, normal thought content, and intact memory.* (4F/3, 7, 14, 22)[.] Moreover, when the claimant returned in June 2016, *her mother reported improved behavior, but the claimant did not show up to her appointments in July or August 2016.* (5F/14-18; 6F/6)

***

In December 2016, the claimant had apparently had [sic] begun to pull sores so that she could taste her own blood and she wanted to taste the blood of others. The claimant had reportedly also hit her younger sister and had developed incontinence. *Nevertheless, she was doing well with schoolwork and she had a euthymic affect, linear, logical, and goal directed thoughts, normal perception, intact language, adequate fund of knowledge, and fair insight and judgment.* (11F/42; 15F/12)

***

Then, in June 2017, the claimant returned to her counselor for the first time in 4 months. The claimant's mother reported that she was frustrated with the claimant's behavior. She explained that the claimant "wrestled" with her sister and was seen smelling old shoes. (14F/35) Nevertheless, when she returned in December 2017, asides for a restricted affect, *the claimant had normal findings, including fair grooming and hygiene, calm behavior, normal motor activity, linear, logical, and goal oriented thought processes, normal thought content, fair concentration, adequate fund of knowledge, intact language, and fair insight and judgment.* (14F/19)

(Tr. 20-22) (emphasis added).

   The court observes that a number of decisions have found that medical opinions "premised

to a large extent upon the claimant's own accounts of…symptoms and limitations[,] may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (citing *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Tate v. Comm'r of Soc. Sec.,* 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding a treating source's opinion because the limitation in question appeared to be based not upon the provider's own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment); *Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....").

Here, neither Dr. Weinhouse nor Dr. Jensen established a treatment relationship with L.A.G. and appear to have performed only one-time evaluations. Further, nothing in their evaluations can fairly be construed as corroborating Plaintiff's recitation of L.A.G.'s alleged behavioral problems. With respect to Dr. Weinhouse, the ALJ specifically noted that "[Plaintiff's] responses to questionnaires indicated that the claimant had withdrawn behavior, social issues, attention issues, anxious/depressed behaviors, thought problems, delinquent behavior, maladaptive behavior, and deficiencies in independent functioning, self-direction, and responsibility, but age appropriate physical development, language skills, and number skills."

(Tr. 21). Thus, the ALJ points out that the bulk of Dr. Weinhouse's opinions were based in large part on Plaintiff's assessment. Although it is understandable that Plaintiff would be a primary historical source for the minor claimant, Plaintiff's argument that Dr. Weinhouse's notes, based on Plaintiff's statements, support Plaintiff's testimony is circular and not well taken. According to the above cited authority, the significance of notes based in large part on a patient's subjective statements and opinions is questionable. Moreover, Dr. Weinhouse acknowledged that the evaluation was based on the psychological history provided by L.A.G.'s mother because the doctor was "still waiting for records from Beechbrook, Department of Job and Family Services … and Signature Health." (Tr. 377). The absence of the latter records is especially significant, as L.A.G.'s counseling was received through Signature Health.

With respect to Dr. Jensen, the ALJ again pointed out that it was "claimant's mother [who] endorsed bedwetting, stealing, lying, difficulty paying attention, self-harm, developmentally inappropriate interests, social withdrawal, poor understanding of personal space, delayed language development, difficulty falling asleep, and incontinence," concluding that "claimant displayed rigid and atypical thought patterns, as well as odd behaviors and distorted reality." (Tr. 22). Indeed, Dr. Jensen's one-time evaluation also indicates it is based significantly on L.A.G.'s mother's reports. (Tr. 543, 545). Further, Dr. Jensen pointed out that L.A.G.'s teacher has found no concerns with L.A.G.'s behavior, which Dr. Jensen acknowledged was a discrepancy "difficult to resolve" given Plaintiff's statements. (Tr. 545-546). Again, Plaintiff's rather circular argument—that Dr. Jensen's report buttresses her credibility simply because it reiterates her statements made to Dr. Jensen—is not well taken. Moreover, Plaintiff has not assigned as error the ALJ's discussion of the various medical sources of record other than the weight ascribed to the ME.

23

The ALJ engaged in a sufficient credibility analysis, and was not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id*. at *8. Here, only a few of the factors are germane as it is undisputed that L.A.G. was not prescribed any medications and that other treatment, namely her counseling, was intermittent with many missed appointments.[5] The ALJ's observations that L.A.G.'s behavior and bedwetting were not an issue at school directly touches upon L.A.G.'s daily activities and the frequency of her symptoms. Further, with respect to other factors, the ALJ also noted the rather benign objective mental status examination findings during December 2016 and December 2017 treatment visits. (Tr. 22).

Given the high level of deference owed to an ALJ's findings with respect to the evaluation

---

[5] L.A.G.'s counselor, Ms. Baker, specifically noted L.A.G had not been seen for significant portions of time after several no-shows for appointments. (Tr. 581). On January 9, 2018, over two-years after the alleged onset date, Ms. Baker noted "that due to the inconsistency with appointments, it has been difficult to assess what is going on." (Tr. 644-645).

of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was deficient. Therefore, Plaintiff's second assignment of error is without merit.

Finally, the court observes Plaintiff's brief does not precisely identify which specific portions of her opinions were improperly deemed not credible. (R. 10). Plaintiff has only taken issue with the ALJ's finding with respect to two domains in this case—interacting and relating to others and caring for oneself. *Id*. With respect to interacting and relating to others, the ALJ appears to credit Plaintiff's testimony by acknowledging that "[t]he claimant fights with her sister and she has a history of unusual sexual behavior," but finds her limitations to be less than marked, a finding supported by the ME and the State Agency medical sources, because L.A.G. "has no behavior problems in school, she is able to participate in group activities, … she has friends in and out of school [, and] … examiners consistently noted that she was cooperative and polite." (Tr. 26). With respect to caring for oneself, the ALJ again appears to credit the testimony that L.A.G. has enuresis and also a one-time incident where L.A.G. defecated during recess because she did not want to stop playing, and again L.A.G.'s "history of unusual sexual behavior." (Tr. 27). Nevertheless, the ALJ found less than marked limitations in L.A.G.'s ability to care for herself based in part on the ME's testimony that claimant's behavior appeared to be self-regulating, that enuresis is not a daytime problem as evidenced by her lack of such problems during the school day, and that Plaintiff's sexual behavior was "confined to one or two instances and not a chronic issue." (Tr. 27-28). Thus, even assuming for the sake of argument some deficiency in the ALJ's credibility analysis, Plaintiff has not clearly delineated any impact on the ALJ's findings with respect to the two domains that are dispositive, as major portions of Plaintiffs' testimony appears to have been credited.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: June 23, 2020

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**